**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALEX GBUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 07 C 1923 |
| | ) | Judge Cole |
| CITY OF HARVEY, ILLINOIS, an Illinois | ) | |
| municipal corporation, and ERIC KELLOGG, | ) | |
| individually and in his Official capacity as | ) | |
| Mayor, ANDREW JOSHUA, individually and | ) | |
| in his capacity as Chief of Police, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**
**PURSUANT TO RULE 50(a)**

Defendants, City of Harvey, Illinois, Eric Kellogg and Andrew Joshua, by their

attorneys, Julie Bruch and Benjamin Jacobi, move this Court for judgment as a matter of

law pursuant to Rule 50(a) and in support thereof state as follows.

**I.      Standard**

At any time before a case is submitted to the jury, a party may move for

judgment as a matter of law under Federal Rule of Civil Procedure 50 ("Rule 50").  Fed.

R. Civ. P. 50(a)(2).  Rule 50 requires a court to render judgment as a matter of law

when a "party has been fully heard on an issue and there is no legally sufficient

evidentiary basis for a reasonable jury to find for that party on the issue."  Fed. R.

Civ. P. 50(a)(1); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

"Since credibility determinations, the weighing of evidence, and the drawing of

legitimate inferences form the facts, are jury functions, not those of a judge, the

court must review the record as a whole, giving credence to the evidence favoring

the nonmovant as well as the evidence supporting the moving party that is

uncontradicted and unimpeached, at least to the extent that that evidence comes

from disinterested witnesses." *O'Sullivan v. City of Chicago*, No. 01-CV-9856, 2007

U.S. Dist. LEXIS 14468, *3 (N.D. Ill. Mar. 1, 2007) (Cole, J.).

## II. There Is No Evidence that the Defendants Personally Retaliated Against Gbur for Making a Statement to the DOJ, Filing an EEOC Charge, or Supporting Marian Beck by Assigning Him to an Allegedly Faulty Squad Car.

To prove his claim for First Amendment retaliation, Gbur must show that (1) he

engaged in "protected speech"; (2) that Defendants intentionally assigned Gbur to a

particular squad car on September 26, 2006 and that Gbur's protected speech was a

reason, alone or along with other reasons, for that assignment; and (3) that Gbur was

harmed and suffered damages. Defs' Proposed Jury Instr. No. 2 (Seventh Cir. Pattern

Instr. 6.01 modified); *see Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501

(7th Cir. 2010). The burden then shifts to the defendants to show by a preponderance of

the evidence that they would have undertaken the same employment action "even in

the absence of protected conduct." *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 973

(7th Cir. 2000); Defs' Proposed Jury Instr. No. 2 (Seventh Cir. Pattern Instr. 6.01

modified). "A plaintiff must show the defendant's personal involvement or

participation, or direct responsibility for the conditions of which he complains [citation],

by demonstrating a causal link between the defendant's conduct and the plaintiff's

injury." *Beiler v. Jay County Sheriff's Office*, No. 11-CV-380, 2012 U.S. Dist. LEXIS 97424, at *17 (N.D. Ind. July 13, 2012) (citing *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) and *Benson v. Cady*, 761 F. 2d 335, 339 (7th Cir. 1985)). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. (citing *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009)).

There has been no evidence at trial that Andrew Joshua or Mayor Kellogg personally and intentionally caused Gbur to be assigned to the allegedly faulty squad car. Gbur testified that Sergeant Mines assigned him to the squad car. (Trans. 67.) Gbur testified that after being assigned to the squad car, he spoke with Commander Wells, Norm Frese, and Sonny Harris about the squad car. (Trans. 71, 73, 75.) At no time did Gbur ever speak with Andrew Joshua or Mayor Kellogg about the squad car.

Andrew Joshua and Mayor Kellogg both testified that they did not have knowledge that Gbur was assigned to the squad car. They both testified that they did not personally assign Gbur to the squad car, and did not order that Gbur be assigned to the squad car. There is no evidence that either Joshua or Kellogg had any personal involvement in Gbur being assigned to the squad car. There is no evidence that they intentionally assigned Gbur to the squad in retaliation for engaging in protected speech.

Taken in the light most favorable to Gbur, the evidence shows that Joshua only became aware of the squad car when a grievance was presented to his Deputy Chief in Joshua's presence *after* Gbur had already been assigned to the squad car. (Trans. 228.)

3

There is no evidence that Joshua knew about or was responsible for Gbur's assignment to the squad car.

Similarly, the only evidence indicating that Mayor Kellogg knew about the squad car was Harris's testimony that he and Norm Frese alerted Mayor Kellogg to Gbur's squad car grievance at a union meeting on the night of September 26. (Trans. 186–88.) That evidence only proves that Mayor Kellogg knew about Gbur's squad car assignment *after* Gbur had already been assigned to the squad car. There is no evidence that Mayor Kellogg personally caused Gbur to be assigned to the squad car, or that he even knew about Gbur's squad car assignment prior to the union meeting.

The evidence that Gbur presented at trial, taken in the light most favorable to Gbur, proves only that some supporters of Mayor Kellogg's 2003 campaign were given high-ranking jobs at the Harvey Police Department. (Trans. 217–18.) Such evidence has no relationship to Joshua's alleged role in assigning Gbur to the squad car. It does not tend to prove or disprove that Joshua did anything. The only evidence available at trial at the close of Gbur's case with respect to Joshua is that Joshua was presented a grievance after Gbur had already been assigned to the squad car. (Trans. 228.) No reasonable jury could conclude that Joshua caused Gbur to be assigned to the squad car.

The evidence that supporters of Mayor Kellogg's 2003 campaign were hired into the Harvey Police Department is also unhelpful to proving Gbur's case against Mayor Kellogg. Such evidence does not prove that Mayor Kellogg ordered or otherwise caused Gbur to be placed in the squad car. Harris testified that Mayor Kellogg made

4

statements on the night of September 26 that his administrators would "take care of"

Gbur, and that Gbur was "backing someone else anyway." (Trans. 188–89.) Those

statements do not tend to prove that Gbur was assigned to the squad car in retaliation

for supporting Marion Beck because Gbur had already been assigned to the squad car.

No reasonable jury could conclude based on the evidence presented that because Gbur

supported Mayor Kellogg's opponent, Mayor Kellogg ordered that Gbur be placed in a

squad car with faulty equipment. At most, the evidence shows that Mayor Kellogg

either refused to get involved in Gbur's complaint or was unconcerned about Gbur

being unhappy with his squad car assignment. Some further evidence must be

presented to link Mayor Kellogg to the decision to place Gbur in the squad car.

Evidence has not been presented that either Andrew Joshua or Mayor Kellogg

had any personal involvement in assigning Gbur to the squad car. This court should

enter judgment in favor of all defendants.

### III. Gbur's Direct Evidence Proves Only that Sergeant Mines Violated the First Amendment, and Does Not Implicate the Defendants.

Gbur presented direct evidence that Sergeant Mines personally retaliated against

Gbur for engaging in protected speech. (Trans. 136.) Gbur testified that when he asked

Sergeant Mines why he had been assigned the allegedly faulty squad car, Sergeant

Mines responded, "This is your punishment for making statements to the DOJ and

backing Marion Beck."[1] (Trans. 67.) Taken in the light most favorable to Gbur, that

---

[1] Sergeant Mines is expected to deny that he made this statement when he testifies for the defense.

evidence shows that Sergeant Mines retaliated against Gbur for engaging in protected speech. However, that evidence does not tend to prove that Mayor Kellogg or Andrew Joshua caused Gbur to be assigned to the squad car in retaliation for engaging in protected speech. There is no testimony that Mayor Kellogg or Joshua ordered Mines to put Gbur in the squad car. In fact, they both testified that they did *not* order Mines to put Gbur in the squad car. The testimony, at best, indicates that Mines was seeking to retaliate against Gbur. Because direct evidence was presented indicating that neither Joshua nor Kellogg made the decision to assign Gbur to the squad car in retaliation for engaging in protected speech, this court should enter judgment in favor of the defendants.

Further, the City of Harvey cannot be liable for Mines's decision to assign Gbur to the squad car because Mines is not a final policymaker. There is no evidence of any express policy that officers are assigned faulty squad cars in retaliation for engaging in protected speech, and there is no evidence of any widespread practice in the City of Harvey of retaliating against patrol officers for engaging in protected speech by assigning them to faulty squad cars. Judgment must be entered in favor of the City of Harvey.

**IV.    There Is No Evidence Supporting an Award of Punitive Damages Against Either Defendant.**

Gbur is entitled to punitive damages against the Defendants only if there is a finding that Defendants acted with callous disregard for Gbur's rights. *Hulbert v.*

6

*Wilhelm*, 120 F.3d 648, 657 (7th Cir. 1997) (affirming district court's grant of judgment as a matter of law as to punitive damages). There is no evidence whatsoever that Joshua knew about the squad car assignment or acted with such callous disregard for Gbur's rights as to justify a punitive damage award. There is no evidence that Joshua personally assigned Gbur to the squad car or caused Gbur to be assigned to the squad car. There is no evidence that Joshua intentionally infringed on Gbur's rights, let alone acted with callous disregard towards Gbur's rights.

Similarly, there is no evidence that Mayor Kellogg acted intentionally or with callous disregard for Gbur's rights. Harris testified that Kellogg appeared angry after Norm Frese presented Gbur's grievance to the Mayor. (Trans. 189.) But this evidence is inapposite as to whether Kellogg acted with callous disregard. The union meeting occurred *after* Gbur had already been assigned to the squad car. There is no evidence that Mayor Kellogg ordered Mines to assign Gbur to the squad or otherwise intentionally infringed on Gbur's First Amendment rights.

There is no evidence that either defendant acted with callous disregard for Gbur's rights. For this reason, this court should enter judgment as a matter of law in favor of the Defendants on Gbur's claim for punitive damages.

**V.     There Is No Evidence Supporting Gbur's Claim for Compensatory Damages.**

Gbur claims compensatory damages for emotional distress. He claims that, due to his assignment to a squad car with faulty equipment, he suffered emotional distress because he was unable to catch a suspect in a shooting and that suspect killed another

individual shortly thereafter. (Trans. 104.) Gbur's own testimony contradicts this theory.

Gbur testified that he responded to a shooting and observed a vehicle suspected to be involved in the shooting. (Trans. 89.) He attempted to pull the vehicle over, but his car did not respond when he pressed the gas pedal. (Trans. 90.) He also testified that as he approached the vehicle, its occupants began shooting at him. (Trans. 91.) He attempted to use the radio to call for help, but it was broken. (Trans. 91.) He testified that although he had a working radio on his shoulder, he tried to use the broken mounted radio out of "muscle memory." (Trans. 91.)

Despite these initial difficulties, Gbur testified that he caught up to the vehicle as it was stopping and its occupants were bailing out. (Trans. 91.) Gbur stopped his vehicle and yelled for the suspects to stop. (Trans. 92.) One of them appeared to pull a gun out of his waistband, so Gbur fired a shot. (Trans. 93.) The suspects then took off running in different directions. (Trans. 93.)

Gbur testified that he chased one of the suspects on foot while the other suspect got away. (Trans. 93.) According to Gbur, the suspect that he was chasing was in reach when Sergeant Mines responded to the call and cut off Gbur's foot pursuit with his squad car. (Trans. 93–94.) That suspect then got away. (Trans. 94.)

This evidence demonstrates unequivocally that the car was not at fault for Gbur's failure to catch the suspect. Gbur was out of the car when the suspect escaped. Gbur failed to catch the suspect because Gbur was too slow and because Sergeant Mines's

8

squad car entered the path of Gbur's foot pursuit. There is no evidence that the car's lack of response to the gas pedal, broken radio, broken lights, or cracked windshield caused Gbur to lose the running suspect. Gbur was already on foot when the suspect escaped.

Gbur argues that if his canine partner would have been present, then perhaps the suspect would have been caught. He asserts that assignment to the squad car is at fault because that particular squad car was not equipped for a canine, and thus Gbur had to leave his canine partner at home. Notwithstanding the pure speculation as to whether the presence of a canine would have aided the capture of one or both suspects, and assuming that there was another canine car available for Gbur to use (a point contended by defense witnesses), Gbur's theory is misplaced because his claim is not that he was placed in a non-canine car, but that he was assigned to a car with faulty equipment. Had Gbur been assigned to one of the new Impalas with new equipment, he still could not have taken his canine with him because they are also not equipped to carry a canine. Based on Gbur's version of the chase, he would have gotten no closer to the suspect had he been in a new car. He still would have pulled up behind them when they attempted to bail from the car. He still would have told them to stop. They still would have run. And he still would have chased one of them on foot. His pursuit would still have been cut off by Sergeant Mines. There is no difference between Gbur's assignment to the old Crown Vic and Gbur's assignment to the new Impala. Gbur still

9

would not have had a canine and Gbur would still have had to chase the suspects on foot.

Gbur's compensatory damages are limited to the emotional distress he felt by virtue of simply being in a squad car with allegedly faulty equipment. The squad car was not inoperable; it just did not have the conveniences of some of the newer cars. Such an alleged retaliatory action is de minimis. "There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). Retaliation for exercising the right to free speech must be likely to deter a person of ordinary firmness from that exercise, and such retaliation must cause an injury. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Otherwise, it is de minimis and not actionable. *See id.* Gbur's assignment to the squad car for one shift was not significant enough to deter a person of ordinary firmness from engaging in protected speech. The evidence proves that it caused Gbur no more than a de minimis injury.

Finally, Plaintiff's proposed jury instruction No. 30 instructs the jury that they can award damages for the reasonable value of medical care and supplies and for physical pain and suffering. Gbur has not introduced any evidence of medical bills, and there is not evidence that he suffered any physical pain as a result of being assigned to the squad car. If this court denies this motion for judgment as a matter of law, then Defendants request that this court strike those portions of Jury Instruction Number 30 indicating that Gbur can recover for medical bills and physical pain and suffering, or enter judgment in favor of Defendants on those claims.

For these reasons, this court should enter judgment as a matter of law for Defendants on Gbur's claim for compensatory damages.

## VI.    Conclusion

Gbur has failed to set forth evidence, viewed its totality, of any of the following:

- That either Andrew Joshua or Mayor Eric Kellogg personally caused Gbur to be assigned to the squad car;

- That either Andrew Joshua or Mayor Eric Kellogg had knowledge that Gbur was being assigned to the squad car;

- That either Defendant was responsible for the assignment ;

- That Gbur's First Amendment rights were violated as a result of a policy, pattern, or widespread practice of the City of Harvey or that its policy-makers;

- That any person other than Mines caused the constitutional deprivation;

- That either Defendant acted with callous disregard for Gbur's rights justifying punitive damages;

- That Gbur suffered emotional damages as a result of not catching the suspect that shot at him;

- That Gbur suffered emotional damages as a result of being assigned to the squad car;

- That Gbur's injury was anything more than de minimis; or

- That Gbur suffered physical pain and suffering or incurred medical bills as a result of being assigned to the squad car.

WHEREFORE, Defendants the City of Harvey, Mayor Eric Kellogg, and former Police Chief Andrew Joshua request that this court grant their motion for judgment as a matter of law and enter judgment in their favor.

Respectfully Submitted,

CITY OF HARVEY, ERIC KELLOGG,
& ANDREW JOSHUA

By:    s/*Benjamin M. Jacobi*
          One of their attorneys

Julie A. Bruch, #6215813
Benjamin M. Jacobi, #6296811
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
e-mail: bjacobi@okgc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALEX GBUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 07 C 1923 |
| | ) Judge Cole |
| CITY OF HARVEY, ILLIOIS, an Illinois | ) |
| municipal corporation, and ERIC KELLOGG, | ) |
| individually and in his Official capacity as | ) |
| Mayor, ANDREW JOSHUA, individually and | ) |
| in his capacity as Chief of Police, | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2013 I electronically filed this Defendants' Motion for Judgment as a Matter of Law Pursuant to Rule 50(a) with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Thomas Radja
radjat2@aol.com

I also certify that this document was hand-delivered to Thomas Radja on January 23, 2013 in open court following the close of Plaintiff's evidence.

**CITY OF HARVEY, ERIC KELLOGG, & ANDREW JOSHUA**

By:     *s/Benjamin M. Jacobi*
Benjamin M. Jacobi # 6296811
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
e-mail: bjacobi@okgc.com

13